IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF/RESPONDENT

VS.                    Civil Case No. 04-CV-4030 &
                       Criminal Case No. 4:01-CR-40019

BRIAN BROWN a/k/a BRIAN L. BROWN                            DEFENDANT/MOVANT

## ORDER

Before the Court is the Report and Recommendation filed March 14, 2006 by the Honorable Bobby E. Shepherd, United States Magistrate Judge for the Western District of Arkansas. (Doc. 187) Defendant/Movant Brian Brown has timely filed his objections to the Report and Recommendation. (Doc. 190) Brian Brown is currently an inmate at the United States Prison, Pollock, Louisiana (Doc. 191) serving concurrent terms of life in prison after being found guilty by a jury of kidnaping and aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 1201(a)(1) and 2241(c). The United States Court of Appeals for the Eighth Circuit affirmed Brown's convictions. *U. S. v. Brown*, 330 F.3d 1073 (8thCir. 2002).

Brown proceeds under 28 U.S.C. § 2255, seeking to vacate, set aside or correct his sentence. Brown presents the following claims:

a. Sentencing enhancements were imposed in violation of Sixth Amendment rights;

b. The indictment should have been dismissed pursuant to the Speedy Trial Act as the trial commenced less than 30 days from the date Brown elected to represent himself;

c. Brown's constitutional rights under the Confrontation Clause were violated by allowing the complaining witness to testify by way of closed circuit television;

<blockquote>
d. The convictions were obtained in violation of the Speedy Trial Act, specifically 18 U.S.C. § 3161(b), for failure to indict within 30 days of Brown's arrest;

e. The convictions were obtained in violation of the protection against "Double Jeopardy;"

f. The convictions were obtained through unconstitutional search and seizure;

g. The convictions were obtained by unconstitutional failure of the government to disclose evidence exculpatory in nature;

h. The convictions were obtained by the unconstitutional and statutory rules that prohibit charging a person with an individual having, "legal custody" of the alleged victim pursuant to 18 U.S.C. § 1201(g)(1)(B)(ii)(VIII);

i. Brown received the ineffective assistance of counsel; and

j. DNA evidence was improperly admitted which contributed to a conviction in violation of the Constitution.
</blockquote>

Judge Shepherd recommends Browns' claims for relief pursuant to § 2255 be denied because the claims are procedurally barred and are substantively without merit. After reviewing the record *de novo*, the Court adopts the Report and Recommendation as its own.

## I. Procedural and Factual Background

Brown did not assert any of these claims on direct appeal. *See Brown*, 330 F.3d 1073. A motion under § 2255 may not serve as a substitute for direct appeal, and the failure to raise an issue on direct appeal ordinarily constitutes a procedural default and precludes a defendant's ability to raise that issue for the first time in a § 2255 motion. *Matthews v. U.S.*, 114 F.3d 112 (8thCir. 1997). However, an ineffective assistance of counsel claim may constitute cause to overcome a procedural default. *Becht v. U.S.*, 403 F.3d 541 (8thCir. 2005). Judge Shepherd skipped the objective reasonable analysis of Brown's ineffective assistance of counsel claims and

focused on whether the failure of Brown's appellate counsel to raise the arguments listed above on appeal were sufficiently prejudicial to overcome the procedural default. Such a path has been endorsed by the United States Supreme Court. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984).

Except for Brown's claims that his Sixth Amendment rights were violated and that unconstitutional search and seizures occurred, Brown failed to object on the record to the other alleged errors. Thus, in making a prejudice determination, Judge Shepherd noted that the Eighth Circuit Court of Appeals would have applied a harmless error standard with respect to the Sixth Amendment and unconstitutional search and seizure claims. *See U.S. v. Mendoza-Mesa*, 421 F.3d 671 (8thCir. 2005). Since these alleged errors have constitutional magnitude, the Government is required to prove that the errors were "harmless beyond a reasonable doubt" or that there is no "'grave doubt' as to whether the error substantially influenced the outcome of the proceedings." *Mendoza-Mesa*, 421 F.3d at 671-72.

With respect to the remainder of Brown's claims, since Brown did not object to the alleged errors, Judge Shepherd analyzed the claims for plain error. *See* Fed. R. Crim. P. 52(b); *U.S. v. Griggs*, 431 F.3d 1110 (8thCir. 2005). Under plain error review, the defendant must show the error affected his substantial rights. *U.S. v. Gianakos*, 415 F.3d 912 (8thCir. 2005). A defendant's substantial rights were affected "if the error prejudicially influenced the outcome of the district court proceedings." *U.S. v. Aiken*, 132 F.3d 432, 454 (8thCir. 1998) (*quoting U.S. v. Beasley*, 102 F.3d 1440, 1452 (8thCir. 1996), *cert. denied*, 520 U.S. 1246 (1997)).

The weight of the evidence against the defendant is an important consideration in both the "harmless error" and "plain error" review. *U.S. v. Roach*, 164 F.3d 403 (8thCir. 1998). The

evidence against Brown was overwhelming. The Eighth Circuit summarized the evidence in deciding Brown's direct appeal. *Brown*, 330 F.3d at 1076. Judge Shepherd also thoroughly reviewed the trial transcript and recited additional evidence in his Report and Recommendation. (Doc. 187, pp. 8-10). Brown makes nine objections (Doc. 190, pp. 2-4, ¶¶ 1-9) to the Report and Recommendation's procedural and factual discussions. The Court finds no merit in these objections and turns to the substance of Brown's claims and Judge Shepherd's recommendations.

## II.     Sentencing Error

The Court agrees with Judge Shepherd's conclusion that no error occurred under either *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000) or *U.S. v. Blakely*, 542 U.S. 296, 124 S.Ct. 2531 (2004). Each statute under which Brown was convicted provides for punishment "by imprisonment for any term of years or for life." 18 U.S.C. §§ 1201(a)(1), 2241(c). Brown received a sentence of life imprisonment on each count, the maximum allowed by statute. Under the elements of each offense, as found by the jury, sentences of up to life imprisonment were permitted. (Transcript, pp. 2237-40). The sentencing enhancements found by the Court increased the guideline range, but not the maximum range permitted under the statutes. *Apprendi* does not apply to sentencing factors that increase the guideline range but do not increase the statutory maximum. *U.S. v. Evans*, 285 F.3d 664 (8thCir. 2002). The Court finds Brown's sentence was not improperly enhanced.

## III.    Speedy Trial/Deprivation of Trial Preparation Time

Judge Shepherd correctly concluded that the time frame for Brown's trial did not violate the Speedy Trial Act, 18 U.S.C. § 3161(c)(2). In his objections, Brown complains that he was not allowed a continuance of the trial to give him more time to prepare for trial. Brown made his

4

request for more time to prepare for trial on the morning of the trial. This request was untimely and denied. Brown also attaches a list of non-specific people he would have subpoenaed had a continuance been granted. (Doc. 190, pp. 7-8) Brown's list is non-specific and only describes the potential witnesses in general terms without listing their name and addresses. (*Id*.) Prior to trial, the Court asked Brown for the names of people he wished to be subpoenaed and Brown only provided one name. (Transcript, pp. 33-35) Therefore, the Court finds no error in denying Brown's oral motion for a continuance.

## IV. Confrontation Clause

Prior to trial, the United States filed a motion with the Court asking that the child victim in this case be allowed to testify from outside the courtroom via closed circuit two-way television. (Doc. 41) Brown did not file a response. Immediately before trial commenced, the Court conducted a hearing on the motion and heard expert witness testimony of Amy Hooper, the child's therapist. Hooper, who had spent 18 hours in therapy with the victim, testified it would be detrimental to the child to testify in court while facing Brown. Hooper testified the victim was scared and nervous about testifying in front of Brown. The victim was worried she would say something Brown would not like and that he would slap or punch her like he had before. Hooper testified she believed the victim would be able to testify if contact with Brown was limited and that her testimony would be more accurate if the contact was limited. Hooper also testified it would be easier for the victim to recount what happened and the chances of re-traumatizing the child would be lessened if she were permitted to testify outside of the courtroom. On cross-examination by Brown, Hooper stated the victim asked if Brown would be shackled and guarded during the questioning. (Transcript, pp. 8-14) After hearing Hooper's

5

testimony, the Court granted the government's motion. (Transcript, p. 17) Prior to the victim's testimony, Brown objected to the procedure on Sixth Amendment grounds. (Transcript, p. 840).

The Court agrees with Judge Shepherd that the system used at trial passes constitutional muster as set forth in *Maryland v. Craig*, 497 U.S. 836 (1990), and Brown does not specifically object to this finding. However, even though the Court and the Assistant United States Attorneys consistently referred to a "two-way" system throughout the trial (Doc. 41, Trial Transcript, pp. 839 and 846), the government admitted at the hearing on this motion that a two-way system was, indeed, not used. Under the system actually used at trial, the victim testified outside the presence of Brown, the judge, and the jury. Those inside the courtroom, including Brown, could see the victim on a television monitor and hear her testimony over speakers, but the victim witness could not see persons inside the courtroom, including those questioning her. No television monitor was placed in the room from which the victim testified. (Hearing Transcript, pp. 344)

As noted above, the actual system used at trial passes constitutional muster under *Craig*. However, the procedure used did not comply with the requirements of 18 U.S.C. § 3509(D)(1). Section 3509(D)(1), enacted after the *Craig* decision, requires a "2-way closed circuit television" be used in these situations. The 2-way system must "relay into the room in which the child is testifying the defendant's image, and the voice of the judge." *Id*. As noted above, it is undisputed that Brown's image was not relayed into the room from which the child testified, but his voice and the judge's voice was. The system used satisfied other requirements of the statute. Despite the non-compliance with § 3509(D)(1), the Court agrees with Judge Shepherd that an appellate court would have found the error did not "prejudicially influence the outcome of the district court proceedings." *U.S. v. Allen*, 132 F.3d at 454 *quoting U.S. v. Beasley*, 102 F.3d at

6

1452. The evidence against Brown was overwhelming. Therefore, the Court finds Brown's substantial rights were not affected and plain error did not occur.

V.     **Speedy Trial/Delay in Indictment**

The Court agrees with Judge Shepherd that the indictment was timely filed under 18 U.S.C. § 3161(b). Section 3161(b) reads:

> An information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

Brown was arrested under a criminal complaint on October 12, 2001. The preceding grand jury for the Western District of Arkansas had met on September 28, 2001, prior to Brown's arrest and crimes. The next grand jury did not meet until November 29, 2001, and the indictment was filed on that day, 48 days after Brown's arrest. Brown's indictment clearly fell within the extension period that § 3161(b) provides when an individual is charged with a felony in which no grand jury has been in session. Brown's objections are general in nature and unconvincing.

VI.    **Double Jeopardy**

The Court also agrees with Judge Shepherd that Brown's convictions on both counts do not constitute a violation of the Double Jeopardy Clause, U.S. Const. Amend V, because different elements are present under each crime. The elements for the crime of kidnaping under 18 U.S.C. § 1201(a)(1) are "(1) that the defendant knowingly and willfully seized, confined, kidnapped, abducted or carried away a person as charged; (2) that the defendant held such a person from the kidnapping; and (3) that such a person was thereafter transported in interstate commerce while so confined, or kidnapped." *U.S. v. Sandoval*, 347 F.3d 627 (7thCir. 2003).

The Court instructed the jury on these elements. (Trial Transcript, pp. 1137-38) 18 U.S.C. § 2241(c) provides "[w]hoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years ... shall be fined under this title, imprisoned for any term of years or life, or both..." Each offense clearly requires proof of a different element. For example, § 2241(c) requires proof of intent to engage in a sexual act with a person under the age of twelve, while § 1201(a)(1) does not require proof of a certain age limit. Clearly these crimes present different elements that must be proved. Therefore, the Court finds Brown's two convictions for these two crimes do no violate the Double Jeopardy Clause.

**VII.    Search and Seizure**

Three days prior to trial, Brown filed a motion to suppress items removed from the cab of the vehicle in which he and the victim were found. The motion was untimely under the Court's scheduling order, but at the end of the first day of trial the Court conducted a suppression hearing. (Trial Transcript, pp. 240-89) The Court found the warrantless search and seizure of the vehicle was constitutional because Brown consented to the search of the vehicle and did not later withdraw his consent to search the vehicle. (Id., p. 289) The Court still believes Brown consented to the search of the vehicle.

Judge Shepherd presents two other reasons why the search was constitutional. First, Brown did not have a legitimate expectation of privacy in the vehicle because the vehicle was stolen. *See U.S. v. Sholola*, 124. F.3d 803, 816 n.14 (7thCir. 1997)(holding person present in stolen car had no expectation of privacy therein); *U.S. v. Lanford*, 838 F.2d 1351 (5thCir. 1988)(holding driver of stolen automobile lacked a legitimate expectation of privacy therein and standing to challenge search of the stolen vehicle). Second, the search was proper under the

8

"automobile exception" to the general rule prohibiting warrantless searches. The warrantless search of a vehicle is constitutional under the automobile exception if law enforcement officers had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began. *See U.S. v. Wells*, 347 F.3d 280 (8thCir. 2003). Further, under the automobile exception, the vehicle need not be searched immediately. *U.S. v. Castaneda*, 438 F.3d 891 (8thCir. 2006). Since law enforcement officers had probable cause to arrest Brown for stealing the vehicle and kidnaping, officers had probable cause to believe the vehicle contained evidence of a crime and were constitutionally permitted to search the vehicle.

**VIII.** ***Brady* Claim**

Brown contends the government failed to disclose five pieces of exculpatory evidence to him prior to trial, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The evidence at issue is

    a.    evidence of prior sexual contact between the victim and her brother, Jeff Rogers;

    b.    evidence of prior sexual contact between the victim and a 15-year old boy in Alabama;

    c.    evidence with respect to credit card telephone calls from Brown to the victim's family;

    d.    a second letter from the victim's step-father to Brown giving instructions as to what to do in an emergency during his trip with the victim; and

    e.    items including a briefcase, audio cassettes, bedding and items contained in a safe, all located in the Peterbilt tractor, at the time of Brown's arrest, which were never produced or accounted for by the United States.

On March 11, 2002, the Court had ordered Brown be moved from the Bi-State Detention Center

to FCI Texarkana so that he could have access to law books and other legal materials to prepare for trial. The government continued to fax the materials to the Bi-State Detention Center. On the morning of trial, Assistant United States Attorney Kyra Jenner learned that Brown had not received discovery materials which the government had faxed to him. The government provided Brown a copy of these materials in chambers prior to the trial beginning. Under Eighth Circuit precedent, *Brady* does not require pre-trial disclosure; due process is satisfied if the materials are "furnished before it is too late for the defendant to use at trial." *U.S. v. Almendares*, 397 F.3d 653 (8thCir. 2005). The materials of which the government had possession were furnished to Brown in time for him to use at trial.

Furthermore, Jenner was not aware of the alleged sexual assault on the victim by the victim's brother. Brown has not shown that any incident of sexual assault on the victim by her brother occurred. In fact, at the hearing on this motion, Sergeant Jodie Holmes of the Hutchinson, Kansas Police Department testified the altercation was nonsexual. (Hearing Transcript, pp. 228-34) At trial, the victim testified about the incident in Alabama, which occurred years prior to Brown's arrest. Brown has not shown how the incident in Alabama is exculpatory; the incident occurred years prior to his arrest. Brown has not showed if any credit-card calls from Brown to the victims' family existed or how the calls are exculpatory. Finally, Brown has never stated how "unaccounted items" taken from the vehicle were exculpatory. Brown's *Brady* claim is clearly without merit.

## IX.  18 U.S.C. § 1201(g)(1)(B)(ii), (vii)

Brown argues that he had legal custody of the child victim and therefore, could not be convicted of kidnaping as a matter of law. The victim's step-father and mother both testified at

10

trial that Brown was to return with the child from Dallas, Texas on October 8, 2001. They explained that any notes Brown possessed were not intended to allow Brown to retain custody of the victim beyond October 9, 2001. The jury obviously credited the parents' testimony beyond a reasonable doubt. Brown's claim that he had legal custody of the victim is without merit.

X.      **Ineffective Assistance of Counsel**

By his own request, Brown proceed without counsel after March 8, 2002 through trial. As discussed by Judge Shepherd and herein, Brown was not prejudiced by any failure of his appellate counsel to raise the arguments now presented by Brown in this § 2255 litigation on appeal.

XI.     **DNA Evidence**

Brown argues that DNA Evidence presented by Melissa Myhand, a biologist of the Arkansas State Crime Lab, was improperly admitted at trial. Myhand testified the crime lab received a known blood sample from the victim, a known blood sample from Brown, the rape kit collected at Wadley Hospital during the examination of the victim, the victim's blue jeans, a flat sheet, a fitted sheet, and a pillow case. No semen or blood was found from the rape kit. Blood was found on the flat sheet, the fitted sheet, and the pillow case. A stain consisting of a mixture of semen and blood was found in the crotch of the victim's blue jeans. A mixture of blood from more than one person was found in the crotch of the victim's blue jeans. A mixture of blood from more than one person was found on the fitted sheet. DNA testing showed that DNA from the blue jeans and fitted sheet came from more than one individual and the victim and Brown could not be excluded as donors. The random possibilities of such a match were 1 in

6,369. Generally accepted technology, scientific methods, and the procedures of the Arkansas Crime Lab were followed. (Trial Transcript, pp. 804-24)

Brown objected to the testimony on the grounds that Myhand relied on tests performed by others at the crime lab. The Court correctly ruled that Myhand could rely on inadmissible hearsay evidence to form her opinion under Fed. R. Evid. 703; *see also Sosna v. Binnington*, 321 F.3d 742, 746 (8thCir. 2003); *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176 (8thCir. 1997). Brown also objected to Myhand testifying as to the probabilities of a DNA match. Brown believes Myhand should only have been allowed to testify if she could conclusively state whether she found Brown's or the victim's DNA on the materials. Brown's theory is incorrect. First, Brown offers no evidence to contradict Myhand's testimony. Second, the Court is permitted to take judicial notice of the reliability of DNA profiling. *U.S. v. Martinez*, 3 F.3d 1191 (8thCir. 1993). Brown's claims regarding the DNA testing and Myhand's testimony are without merit.

## XII. Conclusion

For reasons stated herein and above, the Court finds Brown's claims procedurally barred and substantively without merit. Therefore, the Court finds Brown's claim for relief pursuant to 28 U.S.C. § 2255 should be and hereby is **denied.**

IT IS SO ORDERED, this 13th day of July, 2006.

                                                /s/ Harry F. Barnes
                                                Hon. Harry F. Barnes
                                                U.S. District Court